The next case today is 523-1221, People v. Hampton. Arguing for the appellant is Victoria Rose. Arguing for the appellee is Adam Trejo. Each side will have ten minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. I'm Justice Moore. The other panel members on this case are Justices Welch and Cates. Neither one of them are available this afternoon to be here for the Zoom arguments this afternoon. But they will listen to the arguments on tape and have that. That will be available to them. And of course, they have the briefs. So if you're ready to proceed, I'll ask the appellant to please state your name. And you may proceed. Thank you, Your Honor. May it please the court. My name is Victoria Rose, and I represent Rolander Hampton. Today, I'd like to focus on Argument 1 of the brief, in which I argue that the state failed to prove Mr. Hampton's intent to kill. And Argument 3, regarding the state's improper comments in closing. But I'm happy to answer any questions you have about Argument 2 as well. Let's begin with Argument 1. Mr. Hampton was convicted of the attempted murder and aggravated battery of Paul Penny. Penny and his girlfriend, Tamika Baker, testified that while the three of them were drinking and talking in Penny's apartment, Hampton became strangely enraged when Baker mentioned that she was part of the social club. Penny eventually asked him to leave. But just before he walked out the door, Hampton turned and shot Penny once in the stomach. Illinois law is clear. To prove a defendant guilty of attempted murder, it is not enough to show that you are guilty of attempted murder.  It is not enough to show intent to injure. And it's not enough to show knowledge that the defendant's actions may cause harm. The state must show nothing less than an intent to kill. Yet, at trial, the only time the state addressed the issue of intent was during closing arguments, when the prosecutor commented that if you're going to tell somebody you want them dead without actually telling them you want them dead, a good way to do that would be to shoot them in the belly. That's it. No evidence of threats toward Penny. No repeated gunshots. No evidence that Penny's injury was even life-threatening. Just a single shot and an inference drawn from it. And to be clear, the act of firing a gun at another person can support an inference of intent to kill. But critically, state has not cited a single case in which that act alone, absent any other evidence, was sufficient to prove intent to kill. And in Mr. Hampton's case, the surrounding circumstances undermine that inference. Hampton shot Penny once from 20 feet away. And at that close range, he could have shot Penny in the head or the heart, essentially guaranteeing his death. He did not. After Hampton shot Penny, Penny was still conscious and speaking, so Hampton would have known that his first shot did not kill him. Yet, he did not attempt to shoot him again. Hampton never made any verbal threats to Penny's life. All the state offered was the fact that a deadly weapon was used, and from that, it asked the jury to infer an intent to kill. So what is the standard of review? The standard of review? Yes. So the evidence should be viewed in the light most favorable to the prosecution. But that standard doesn't mean blind deference. The trier of fact needs to look at all the surrounding circumstances to determine intent to kill. And here, where Mr. Hampton had the opportunity to shoot Penny again, there are no threats, no follow-up, no evidence. You think shooting once is quite a demonstration of intent? Shooting them in the abdomen? In some cases, it would be reasonable to infer an intent to kill from shooting someone in the stomach. But it can't be the only evidence supporting an attempt murder conviction. Our courts have repeatedly held that the trier of fact must look at all the surrounding circumstances to determine intent to kill. And here, the surrounding circumstances undermine that inference. All the state offered was the fact that a deadly weapon was used, and it asked the jury to infer an intent to kill from that. There is no precedent for affirming an attempt murder conviction on such little evidence of intent. And for those reasons, I respectfully ask this court to vacate Mr. Hampton's conviction for attempt murder, reduce it to the merge offense of aggravated battery, and remand for sentencing on that count. Next, I would like to turn to the state's improper comments during closing arguments. In addition to presenting no evidence showing Mr. Hampton's intent to kill Penny, the state presented limited evidence that Hampton was involved in the shooting at all. In the face of that, the state didn't simply ask the jury to consider the evidence before it. It told the jury to consider the lack of evidence that Hampton presented. In closing, the state highlighted that the jury had, quote, received no evidence whatsoever of any other cause of Penny's injuries. And because defense counsel suggested in closing that another person may have shot Penny, the state responded during rebuttal that the jury had, quote, received absolutely no evidence in this case about anybody else being at Penny's apartment that night. In doing so, the state implicitly shifted the burden of proof and told the jury to convict Hampton not because it had proved him guilty beyond a reasonable doubt, but because Hampton did not present any evidence supporting his innocence. The state also argued background evidence. So what standard of review do we apply here? I understand there's a split. There is a split. One moment. So in People v. Boone, this court used an abusive discretion standard to determine whether the trial court erred in sustaining improper comments by the state and then used a de novo standard to assess whether the comments substantially prejudiced the defendant. But because the trial counsel failed to object to the comments in Hampton's case, I suggested this court use a de novo standard in reviewing both the propriety of the comments and the prejudice it caused. That's what the Illinois Supreme Court did in People v. Wheeler, in which the trial court failed to object to the prosecutor's improper comments. So the state also argued background evidence. To explain my contradictions in Baker's testimony, the state told the jury that our brains aren't like cameras and trauma upsets the way we order our memories. And when we're in fight or flight mode, we have no control over what we focus on. But no witness, expert or otherwise, testified to any of that. The effect of trauma on a person's memory is not common knowledge, so it was improper for the prosecutor to rehabilitate Baker's credibility by playing as an expert in psychology. Finally, in rebuttal, prosecutors suggested that a tattoo on Mr. Hampton's back referred to a street block in Chicago. The state used this tattoo to imply that Mr. Hampton was gang affiliated and the shooting had something to do with that gang affiliation. By putting to the minds of the jury that Mr. Hampton was a gang member, maybe he's also the type of violent person who would have had the intent to kill. But again, there is no evidence at all supporting the idea that Mr. Hampton's tattoo was gang related. No witness made that connection. So the state introduced speculation, disguised as evidence, to cast Mr. Hampton as a violent gang member, the type of person who would have no problem committing attempted murder. And all of these comments weren't isolated remarks. They formed a pattern of improper burden shifting, speculation, and the bolstering of a key witness. And in a case this close, where the jury convicted on one count of attempted murder but acquitted on another, these errors were not harmless. The evidence against Hampton was not overwhelming. Hampton's DNA was found on a cup in Penny's apartment, but that only showed that Hampton was once there. The state relied almost entirely on the testimony of Penny and Baker to prove its case. And even this was tenuous evidence of Hampton's guilt. Officers had to ask Penny multiple times who committed the shooting before he finally named Hampton. And the jury found Baker's account of the shooting so incredible that it acquitted Hampton of her attempted murder. There is no confession, no other eyewitnesses, no video footage, no weapon recovered, and no motive. The state's closing argument, therefore, may have kept the scales of justice against Hampton and swayed the jury to convict on an improper basis. So, I ask this court to reverse Mr. Hampton's convictions and remain for a new trial, on which the jury reaches its verdict based on the evidence, and only the evidence. For Argument 2, regarding the violation of Mr. Hampton's right to a speedy trial, I ask that this court reverse his convictions outright. And if there are no further questions, I will reserve any remaining argument for rebuttal. Thank you. Thank you, Counsel. You will have time on rebuttal. Counsel for Appley, you may proceed, and please remember to state your name for the record. May it please the court, Counsel Adam Trejo, on behalf of the people of the state of Illinois. Before addressing the first argument, the state would like to highlight the third argument regarding the state's closing arguments. The issues have been forfeited, and the lens that we're reviewing this argument is plain error. And in their brief, defendant argues both prongs and also ineffective assistance of counsel. And plain error wasn't mentioned earlier, so the state wanted to highlight that fact. In regards to the first argument, there are multiple cases stating that an inference can reasonably be concluded when someone points a firearm at an individual, aims it at them directly, and shoots it, that it can be reasonably inferred that an intent to kill was established by a defendant or slash shooter. And the state cites multiple cases within its brief standing for that proposition. Defendant also claims that the state didn't present other evidence to support this intent, and the state disagrees on that. As noted within the state's opening brief, the defendant fled the apartment after shooting the victim and attempting to shoot the victim's girlfriend, and the state cites case law stating that evidence of flight is consciousness of guilt. Furthermore, after shooting the victim in the abdomen, the defendant took the victim's phone away. He didn't call 9-1-1, so the defendant precluded the victim from calling 9-1-1 himself, and he left him there to bleed out to death. Now, thankfully, the victim's girlfriend had a cell phone, so she could have called 9-1-1. So collectively, all these facts together support the inference that the defendant had the intent to kill the victim. And as opposing counsel conceded, it's the evidence most favorable in light to the state. And it's the state's assertion that the evidence in this case was extremely overwhelming. Do you have any questions regarding Issue 1 before moving on to Issue 3? No. Okay, thank you, Your Honor. In regards to Argument 3, the defendant cannot establish plain error under either prong. There is no case standing for the proposition that the complaint about comments established second-pronged plain error. And regarding Prong 1, the evidence in this case was not closely balanced, assuming this court concludes that an error did occur. But it is the state's position that there was no error or misstatement of the facts. Regarding the first statement, where the state said there was no other evidence explaining any other causes of these injuries, that is a proper inference of the evidence. We have a victim with a gunshot wound, and there's no weapon recovered. So, the state used common sense and said the only thing that could have caused these injuries is a firearm. Because the victim has a gun wound to their stomach. In regards to in rebuttal, when the state said that we absolutely have no evidence. I don't recall that the specific type of gun was identified, but a shell casing was identified in the apartment. I'm sorry? What caliber? The specific caliber escapes me at this moment, so I do not have that information at the top of my head. Only that a shell casing was recovered. And that supported the state's inference that a gun was used in this case, combined with the fact that there's a shell casing and a gunshot wound. But even if this court, as I said, believes that it was error to note this. The jury was giving jury instructions that, again, closing arguments are not evidence. And if there's any contradiction within the evidence and what's stated to, again, look at the evidence. So, that jury instruction added protection to the defendant, assuming this court believes there was error. Moving on in rebuttal. What facts not in evidence were stated? Can you repeat your question, Your Honor? What facts allegedly not in evidence or what facts not in evidence were stated in closing? None. That is the state's position. What's the defendant's position? The defendant's interpretation is that the state did argue facts not in evidence, but the state couldn't identify any facts that were not in evidence. For example, when the state said there was no other evidence explaining any other causes of these injuries, it didn't emphasize facts not in evidence. There was a gunshot wound. There was a shell casing in the victim's apartment. The defendant is attacking conclusory statements as opposed to specific items mentioned by the state. So, the defendant is challenging the conclusory statement that there's no other evidence explaining any other causes of these injuries. That's really the crux of their argument, that conclusion. But the state didn't identify any items not in evidence. As I said, the state emphasized the gunshot wound, the shell casing found in the victim's apartment, the fact that two witnesses testified that this individual was the person who shot the victim inside the apartment. So, again, the defendant is challenging the inference itself rather than what is based on the inference. In rebuttal, when the state said we have no absolute evidence in this case about anybody else except those three people there that night, that's in response to defense counsel's argument. The defense counsel repeatedly stated there is no other evidence identifying the shooter except those two people. So, essentially, the state's rebuttal argument just echoed what the defense counsel, what the defendant's attorney had emphasized within its closing argument. Defense counsel said, defense counsel attacked the identity of the shooter, correctly noting that the DNA evidence showed that he was in the apartment at that time, but emphasized that the evidence rests on the credibility of two witnesses. And repeatedly, the defense attorney said the only evidence that we got or the only testimony that we got are these two witnesses. So, in rebuttal, the state confirmed, yes, essentially, defendant's attorney is correct. The only evidence in this case are the collected bullet items and the two eyewitnesses who testified. And then there's nothing else. So, the complaint about remark in rebuttal, it just was invited by the defendant's attorney. And, again, these comments could not establish plain error under either prong as the evidence in this case was not closely balanced. Regarding motive, it was the defendant during their closing argument that first brought up motive in their closing remarks. The defendant's attorney is the one who referenced the biker organization. So, in rebuttal, the state needed to address the issue of motive and the biker organization fact because it was invited to by defendant's attorney. And, again, the state emphasizes that even if there were error, it's not plain error. Absent any further questions, does your honor have any other concerns? No, I don't have any other questions. Thank you. The state respectfully requests that this court affirm defendant's conviction. Thank you, counsel. Rebuttal? Thank you. I have just a few points in response. The state points to several cases to support its argument that a single gunshot to the abdomen is sufficient evidence of an intent to kill. But in each of those cases, there were additional surrounding circumstances showing intent. In every case, the defendant made verbal threats and or they shot at the victim multiple times. The state has not and cannot point to any case where an attempt murder conviction was affirmed based on a single gunshot alone with nothing else. And Hampton did flee the scene after shooting Penny. And fleeing the scene may be evidence that some crime occurred, but it does not show that an attempt murder specifically occurred. Regardless of whether he shot Penny with the intent to injure or the intent to kill, he would want to leave the scene either way. What is flight evidence of? Consciousness of guilt. And again, it could be guilt that something occurred, but not necessarily that an attempt murder occurred. It's also pure speculation to think that Hampton stole Penny's phone so that he wouldn't be able to call for help. Also, the record shows that Penny had two phones actually. One of his phones was left in plain view on the table. So if that had been Mr. Hampton's intent, he would have taken that phone too. It also would be absurd to use the defendant's failure to call 911 as evidence of intent to kill. The vast majority of people don't call 911 right after they commit a crime. Whether that crime be an aggravated battery or an attempt murder. Every case in which a person causes a significant injury and then does not call 911 for the victim could be elevated to an attempt murder charge if that were the law. For argument three, this case was closely balanced for the purposes of first-pronged claim error. Mr. Hampton was acquitted on one attempt murder count and convicted on another based solely on his DNA on a cup and the testimony of two eyewitnesses, with one witness having very questionable credibility. So in that context, improper closing arguments that shift the burden of proof ulcer the witness's credibility and imply that Mr. Hampton is a gang member could absolutely tip the scales against him. And our Supreme Court has held that when it's unclear whether an improper argument has affected the outcome of a trial, doubt as to its harmful effect must be resolved in favor of the defendant. And that's People v. Weinstein, 35L2D467. The state also implicitly concedes in its response brief that this issue may be reviewed as second-pronged claim error as well. Because improper comments in closing subvert a defendant's right to a fair trial, especially when some of the comments were made during rebuttal, as is the case here. The state also seems to argue that it was only arguing reasonable inferences to be drawn from Penny having a gunshot wound to the stomach. And the state is obviously free to suggest that Hampton shooting Penny is a reasonable inference to be drawn from that wound. But the state cannot bolster this inference by highlighting the fact that Hampton presented no evidence to the contrary. It said that the jury had received no evidence whatsoever contradicting its theory that Hampton had shot Penny. That is classic burden shifting, and that is improper argument. Also, to answer your question about what facts not in evidence were used, the prosecutor argued about trauma and its effects on memory, saying that our brains aren't like cameras, and trauma upsets the way we order our memories, and you can't focus on anything when you're in fight-or-flight mode. That's the area of an expert witness to testify to, not a prosecutor. Another fact not in evidence was that Mr. Hampton's tattoo, which said 4700 BLK, was referring to a street block in Chicago. That was never testified to. There's no reason to think that. There also was a jury instruction about closing arguments not being evidence, but where prosecutors' improper comments are pervasive, as they are here, our Supreme Court has held that standard jury instructions may not be sufficient to cure the damage done by those comments. Those instructions are given in nearly every trial, and if they are sufficient to mitigate all prejudice, the state could say essentially anything it wanted in closing with that question. Finally, the defense cannot invite the prosecution to shift burden. If the prosecution were to argue something, and the defense said, but why didn't they bring Jane Doe to testify, the state is then free to say, well, they also could have invited Jane Doe to testify. But they can't make sweeping statements about how the jury received no evidence contradicting its theory at trial. For all these reasons, I urge this court to grant Mr. Hampton's request for relief. Thank you. Well, thank you, counsel. The court will take the matter under advisement and issue its decision in due course.